UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JILL COMPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:10-cv-01448-LJM-DML |
| | ) |
| ALLSTATE PROPERTY & CASUALTY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## Order Following *In Camera* Review

On November 15, 2011, the court held a discovery hearing on defendant Allstate Property & Casualty Insurance Company's ("Allstate") objections to producing certain portions of a computerized claims record known as the NextGen record. The court heard argument from the parties and ordered Allstate to submit the record for *in camera* review. The parties also provided the court with the deposition transcript of an Allstate claims examiner, Bradley Schaefer, who testified regarding the claims record and his practices in keeping track of his activities by making entries in the NextGen record.

Allstate contends that its redactions are proper because they are protected from disclosure by the attorney-client privilege or the work product doctrine. Allstate made other redactions because entries were "privileged" insurance reserve information, "privileged" information regarding another insured, or "privileged" subrogation information. In addition, Allstate justifies some redactions on the ground that the information is not relevant. Allstate has coded the NextGen record to show its grounds for each redaction.

The court has carefully reviewed the NextGen record and the reasons for Allstate's redactions, examined applicable law, and makes the determinations explained below.

**Factual Background**

This case concerns insurance coverage to Ms. Compton for losses from a November 15, 2009 fire that destroyed a home she owned. Allstate, by Mr. Schaefer, advised Ms. Compton by letter dated July 8, 2010, of Allstate's denial of her claim. Mr. Schaefer was the primary claims examiner for Ms. Compton's claim. He works in one of Allstate's special claims investigation units, a unit to which "suspicious" claims are sent for handling. A claim may be labeled "suspicious" if, for example, the insured has a significant history of prior claims, a fire appears to have suspicious origins, the insured appears to have had a financial motive, or there is an indication that an insured may have made misrepresentations about the claim. For various reasons, Ms. Compton's claim was investigated primarily under Mr. Schaefer's direction, and the claim was ultimately denied based on alleged material misrepresentations that Ms. Compton made in connection with her claim. Further, although Allstate concluded that the fire was intentionally set, Mr. Schaefer had (and has) no basis to believe that Ms. Compton set the fire or caused it to be set.

Allstate uses a computerized claims recordkeeping system called NextGen. The NextGen system is used by Allstate representatives to record their activities in connection with the claim process. The NextGen claims notes entered by Allstate personnel are used by Allstate as a reference source of all activities undertaken in investigating and processing a claim. Mr. Schaefer testified that his activities for Ms. Compton's claim included having discussions with field adjusters and personal property adjusters, hiring an investigator to perform a "cause and origin" analysis and report, obtaining information from the local fire department, hiring an

investigator to interview persons in Ms. Compton's neighborhood to find witnesses regarding the fire or other activities at the home, conducting background checks regarding Ms. Compton including with respect to her finances and bankruptcy filings, reviewing claims files for other claims Ms. Compton has made, hiring outside counsel to take Ms. Compton's and her daughter's examination, and participating in those examinations. Mr. Schaefer also testified that, at least up to the time that he sent the July 8, 2010 letter to Ms. Compton denying her claim, he had no reason to believe that Ms. Compton intended to hire counsel or that this matter would lead to litigation.

Mr. Schaefer agreed that his documentation of activities as part of evaluating Ms. Compton's claim in the NextGen computerized notes was done as part of the ordinary course of his claim evaluation.

## Analysis

### Work Product Doctrine

The court first addresses the work product doctrine and its application in the first-party insurance context.

Allstate's ability to withhold documents based on the work product doctrine is governed by federal law. *Harper v. Auto-Owners Ins. Co.,* 138 F.R.D. 655, 658 (S.D. Ind. 1991). The work product doctrine protects from disclosure (1) documents and tangible things (2) prepared in anticipation of litigation or for trial (3) by or for a party or its representatives. Fed. R. Civ. P. 26(b)(3). An insurance company in a first-party insurance coverage dispute may not withhold on work product grounds material that it or its representatives prepared as part of the normal course of the insurance business, as contrasted to documents prepared for purposes of litigation with its insured. *See Harper,* 138 F.R.D. 655 (S.D. Ind. 1991) (containing detailed discussion for

applying the anticipation of litigation factor in insurance coverage litigation). In the insurance context, the same document (or an entry in a document) can serve both litigation and ordinary business purposes. *Harper,* 138 F.R.D. at 661 n.2. A document that serves dual purposes *may* be protected work product for purposes of Rule 26(b)(3) where the "'primary motivating purpose behind the creation of a document or investigative report [is] to aid in possible litigation.'" *Binks Mfg. Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1118 (7th Cir. 1983) (quoting *Janicker v. George Washington University,* 94 F.R.D. 648, 650 (D.D.C. 1982)). *See also Stout v. Illinois Farmers Ins. Co.,* 852 F. Supp. 704, 706 (S.D. Ind. 1994) (for document to fall within work product doctrine, "it must pass the 'primary motivating purpose' test" discussed in *Binks*).

Allstate has redacted entries from the NextGen record as work product on the ground that the investigation of Ms. Compton's claim was "outside the scope of ordinary claims adjustment with the prospect of litigation." It points to the numerous grounds it had for suspecting foul play (by someone) or an otherwise improper claim by Ms. Compton as justification for labeling the entries work product. But the existence of an out-of-the-ordinary claim does not transform work regarding the claim into litigation work product. Allstate's normal course of business includes the adjustment of both "suspicious" claims and "ordinary" claims. Although Allstate may assign specialists to adjust "suspicious" claims and those specialists may undertake a more rigorous and detailed investigation of a claim than Allstate finds necessary for "ordinary" claims, the investigation and adjustment of a "suspicious" claim still falls within Allstate's ordinary business duty to its insured to examine, adjust, and investigate the claim, and to determine whether and the extent to which the claim must be covered.

Based on the court's review of the NextGen record and Mr. Schaefer's testimony regarding his activities, the court finds that none of the entries *before suit was filed by Ms.*

*Compton* were made with the "primary motivating purpose" to aid in possible litigation. The seven entries dated 11/19/2010, after Ms. Compton filed her lawsuit, and redacted on work product grounds, need not be produced.

**<u>Attorney-Client Privilege</u>**

Allstate made redactions to some entries because they reflect communications between Allstate and an outside lawyer it hired to conduct the oral examinations, under oath, of Ms. Compton and her daughter.

In a diversity case where state law provides the substantive rule of decision, privileges are determined in accordance with the applicable state law. Fed. R. Evid. 501. In the absence of argument that another state's laws apply, and because the home destroyed in the fire was located in Indiana, the court will apply Indiana attorney-client privilege law to the issues presented. *National Union Fire Ins. Co. v. Standard Fusee Corp.,* 940 N.E.2d 810, 814 (Ind. 2010) (quoting *Dunn v. Meridian Mutual Ins. Co.,* 836 N.E.2d 249, 251 (Ind. 2005)) (general rule is that an insurance policy "'is governed by the law of the principal location of the insured risk during the term of the policy'").

Indiana's attorney-client privilege is an evidentiary privilege codified at Ind. Code § 34-46-3-1:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases.

It assures a client that it can provide complete and candid information in confidence to its counsel and counsel in turn can provide complete and candid legal advice about the client's rights and liabilities without fear that the confidences will be revealed. *Lahr v. State,* 731 N.E.2d

479, 482 (Ind. Ct. App. 2000); *Hartford Financial Services Group, Inc. v. Lake Cnty. Park and Recreation Bd.,* 717 N.E.2d 1232, 1235 (Ind. Ct. App. 1999).

Indiana courts have applied the attorney-client privilege to protect from disclosure communications between a lawyer and an insurance company regarding the company's coverage rights and obligations to its insured. *See Hartford Financial,* 717 N.E.2d at 1236 ("Simply put, Hartford retained counsel to investigate [its insured's] claim, render legal advice and make a coverage determination under the policy"); *Howard v. Dravet,* 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004) (evaluation letter written by outside counsel to the insurer contained legal advice and "is protected by the attorney-client privilege because it involved confidential communications"). *See also Irving Materials, Inc. v. Zurich American Ins. Co.,* 2007 WL 4616917 at *4 (S.D. Ind. Dec. 28, 2007) ("The attorney-client privilege can, however, be invoked for information pertaining to general coverage issues (in contrast with the specific handling of the underlying claims) and other legal advice.")

The court's review of the NextGen report shows that Mr. Schaefer had various communications with attorney Scott Tyler, a lawyer in private practice who acted as outside counsel to Allstate, and with whom Mr. Schaefer communicated about the oral examinations of Ms. Compton and her daughter, and about coverage of the claim. Some of those communications concern legal advice regarding the claim or involve the exchange of information for the purpose of obtaining legal advice. But other entries reflecting communications between Mr. Schaefer and Mr. Tyler do not relate to the provision of legal advice but rather discuss meeting arrangements or transfer information consistent with the claims adjustment function. Legal advice does not appear to have been the aim of these communications. *See Lahr,* 731

N.E.2d at 482 ("not every communication between an attorney and client is deemed a 'confidential communication' entitled to a reasonable expectation of confidentiality").

Allstate may maintain its redactions made on attorney-client privilege grounds for the following entries only:

| Date/Time of Entry | Page of NextGen Report |
|---|---|
| 1/13/2010; 8:52 AM | 88-89 |
| 1/21/2010; 8:08 AM | 84 |
| 1/21/2010; 8:00 AM | 84 |
| 1/25/2010; 10:19 AM | 82 (attachment only) |
| 2/10/2010; 3:31 PM | 75 |
| 2/17/2010; 11:57 AM | 72-73 |
| 2/24/2010; 9:45 am | 71 (last 3 lines only) |
| 2/24/2010; 10:59 AM | 69-70 |
| 3/11/2010; 2:10 PM | 65-66 |
| 3/16/2010; 9:25 AM | 62 |
| 3/25/2010; 9:27 AM | 57-58 |
| 4/19/2010; 10:14 AM | 51 |
| 4/19/2010; 1:35 PM | 50 |
| 4/27/2010; 1:41 PM | 46-47 |
| 4/27/2010; 3:42 PM | 45 |
| 4/27/2010; 3:50 PM | 44-45 |
| 5/6/2010; 1:51 PM | 41-42 |
| 5/7/2010; 8:30 AM | 41 |

| | |
|---|---|
| 5/7/2010; 9:08 AM | 40-41 |
| 5/13/2010; 1:39 PM | 38 |
| 5/27/2010; 2:04 PM | 34 |
| 5/27/2010; 2:22 PM | 33 |
| 6/10/2010; 11:12 AM | 30 |
| 6/10/2010; 4:41 PM | 30 |
| 6/10/2010; 4:43 PM | 30 |
| 6/14/2010; 3:24 PM | 28 |
| 6/22/2010; 3:45 PM | 25-26 |
| 6/22/2010; 3:52 PM | 25 |
| 6/23/2010; 2:58 PM | 25 |
| 6/23/2010; 3:20 PM | 24-25 |
| 7/8/2010; 9:03 AM | 22 |
| 7/14/2010; 2:48 PM | 19 |
| 7/15/2010; 2:25 PM | 19 |
| 7/29/2010; 9:58 AM | 17 |
| 8/3/2010; 7:16 AM | 16 |

**<u>Loss Reserves Information</u>**

Allstate has made redactions to entries on the ground that the information is "privileged insurance reserve information," but it has not provided the court with any authority or factual analysis that would permit the court to conclude that the information fits any privilege. The court understands that insurers are reluctant to share reserve information because reserves generally reflect only precautionary estimates used for business-risk purposes and not an

8

insurer's opinion about the merits of a claim. But the court has no basis for finding the information wholly irrelevant or for finding that the burden of revealing the information in the NextGen report outweighs any potential relevance. *See, e.g., Silva v. Basin Western, Inc.,* 47 P.3d 1184, 1190-1192 (Colo. 2002) (discussion of cases from other jurisdictions on discoverability of loss reserve information in both the first-party and third-party insurance context). This is not to say that the reserve information is admissible.

On the record before it, the court finds no legal basis for permitting Allstate to redact the loss reserve information for discovery purposes.

**Other Information Allstate Asserts Is Privileged or Irrelevant**

Allstate redacted a few other entries—those relating to potential subrogation claims and those regarding the adjustment of a claim by the mortgagee on the home—on the ground that the information is irrelevant or otherwise "privileged." Allstate maintains that information about adjustment of the mortgagee's claim is privileged. The court assumes Allstate is invoking the insured-insurer privilege recognized in *Richey v. Chappell,* 594 N.E.2d 443 (Ind. 1992). *Richey* held that an insured's statement about the underlying event given to the insurer (which has a duty to defend its insured) and that is in the nature of a communication the insured would make for the purpose of obtaining legal advice, can be protected from discovery by the person suing the insured. The entries regarding the mortgagee in the NextGen report do not remotely fit these circumstances.

The entries in the NextGen report regarding subrogation do not appear to have been made primarily because of the prospect of subrogation litigation, but appear to reflect a typical and ordinary evaluation of whether the insurer has any subrogation interest to pursue.

With respect to the few entries that Allstate additionally asserts relate to matters "unlikely to result in the discovery of admissible evidence," the court finds that the presence of the information within the main claims record itself is sufficient to make the information at least marginally relevant. The court can find no countervailing burden to their production that justifies their redaction.

Thus, with respect to entries Allstate labeled as "irrelevant," or privileged because they concern subrogation interests, or privileged because they involve the mortgagee, the court finds that the redactions are not appropriate.

### **Conclusion**

Based on the above analysis and the court's *in camera* review of the redactions to the NextGen computer claims report, the only redactions that Allstate may maintain are those identified in this order on pages five (seven entries redacted on work product grounds) and seven and eight (list of entries redacted on attorney-client privilege grounds). All other portions of the NextGen report must be produced. Allstate must produce the NextGen report, with the revised redactions as provided in this order, by December 28, 2011.

Further, because the new version of the NextGen report reveals significantly more information than Ms. Compton had available to her when Mr. Schaefer was first deposed and because Mr. Schaefer's testimony established that his recollection about various matters may be refreshed by entries in the NextGen report that had been redacted, Ms. Compton may resume the deposition of Mr. Schaefer.

So ORDERED.

Dated: 12/13/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

William E. Winingham
WILSON KEHOE & WININGHAM
winingham@wkw.com

Jeffrey William Ferrand
JENNINGS TAYLOR WHEELER & HALEY
jferrand@jtwhlaw.com

Thomas R. Haley III
JENNINGS TAYLOR WHEELER & HALEY
thaley@jtwhlaw.com